J-S62016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| NOLAN SMITH, | |
| Appellant | No. 2467 EDA 2013 |

Appeal from the Judgment of Sentence of July 29, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006107-2012

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                **FILED NOVEMBER 25, 2014**

Appellant, Nolan Smith, appeals from the judgment of sentence entered on July 29, 2013 in the Criminal Division of the Court of Common Pleas of Philadelphia County, as made final by the denial of his post-sentence motion.  We affirm Appellant's convictions but, after *sua sponte* review, are constrained to vacate his judgment of sentence and remand for sentencing purposes.

On February 23, 2012, Philadelphia police officers conducted a traffic stop of a vehicle operated by Appellant.  During the stop, officers recovered heroin and cocaine from the interior of Appellant's automobile.  On May 31, 2012, the Commonwealth filed an information charging Appellant with possession of a controlled substance with the intent to deliver (PWID) and

knowing and intentional possession of a controlled substance (K&I).[1]
Appellant moved to suppress the physical evidence on September 20, 2012,
alleging that the offers lacked reasonable suspicion to detain his vehicle.  In
response, the trial court convened a hearing on Appellant's suppression
motion on May 20, 2013.  Set forth below is the trial court's summary of the
facts established at the suppression hearing.

> At [Appellant's May 20, 2013 suppression hearing], the
> Commonwealth presented the testimony of Philadelphia Police
> Officer Kevin Devlin.  Appellant [testified on his own behalf] and
> presented the testimony of Philadelphia Police Officer Joseph
> Carter[.]
>
> On February 23, 2012, at approximately 7:30 p.m.[,] Officers
> Kevin Devlin and Joseph Carter of the Philadelphia Police
> Highway Patrol were in the parking lot of the Franklin Mills Mall
> in the city and county of Philadelphia.  Officers Devlin and Carter
> were in the area to assist the Bensalem Police Department with
> an investigation into an alleged drug delivery service.  Bensalem
> Police informed the [o]fficers that an individual with multiple
> outstanding arrest warrants would be arriving at the Franklin
> Mills Mall for a drug transaction.  Bensalem Police also stated
> that the suspect would be driving a silver Monte Carlo.  The
> original meeting place was to be outside the JC Penney at the
> mall, but Bensalem police received information that it was
> moved to the Dave and Busters parking lot due to police
> presence.  Officers Devlin and Carter set up surveillance near the
> Dave and Busters along with several other Philadelphia and
> Bensalem Police Officers.  Officer Devlin observed a silver Monte
> Carlo pull up in front of Dave and Busters and the car was
> surrounded by his fellow [o]fficers.  The driver of the car made a
> fast motion toward the floor of the vehicle and was then
> removed from the car by police.  Officer Devlin approached the
> car while the driver was being removed and observed a clear

---

[1] 35 P.S. §§ 780-113(a)(30) and (a)(16).

sandwich bag with numerous bundles of alleged heroin and a
knotted [] bag containing alleged cocaine. The bag was located
in plain view on the driver's side floor in front of the seat. The
drugs field tested positive for heroin and cocaine. Police
recovered 71 packets of heroin in blue glassine packets stamped
with basketballs and [15.81] grams of cocaine. Appellant was
alone in the vehicle and the individual [who] Bensalem Police
had anticipated arriving was not at the scene.

Trial Court Opinion, 3/31/14, at 1-2.

The trial court denied Appellant's suppression motion at the conclusion
of the May 20, 2013 hearing. Thereafter, the Commonwealth and Appellant
proceeded to a stipulated bench trial on July 29, 2013. Following trial, the
court found Appellant guilty of all charges and sentenced him to serve a
mandatory term of three to six years' incarceration for his PWID conviction.[2]
Renewing his objection to the vehicle stop, Appellant moved for

_____

[2] At Appellant's stipulated trial, the Commonwealth marked and moved into
evidence a copy of the chemical analysis of the substances recovered from
Appellant's vehicle. N.T., 7/29/13, at 13. The report reflected that officers
recovered 1.343 grams of heroin and 15.81 grams of cocaine from
Appellant's automobile. *Id.* Although the record is less than clear, it
appears from this information that Appellant received a mandatory minimum
sentence based upon the weight of the seized substances, in particular the
cocaine found in his possession. *See* 18 Pa.C.S.A. §§ 7508(a)(3)(ii)
(imposing mandatory minimum sentence of three years in prison for
convictions involving at least ten grams but less than 100 grams of cocaine)
and 7508(a)(7)(i) (imposing mandatory minimum sentence of two years in
prison for convictions involving at least one gram but less than five grams of
heroin). We address the legality of this sentence below. The court ordered
no further punishment on Appellant's K&I conviction.

post-sentence relief on July 30, 2013. The trial court denied relief on August 9, 2013. This appeal followed.[3]

Appellant's brief raises one issue for our consideration:

Did the trial court err in failing to suppress the physical evidence recovered from inside the vehicle the defendant was driving because the police did not have reasonable suspicion or probable cause to initiate a car stop and remove the defendant from the vehicle after which time the police observed and recovered the physical evidence?

Appellant's Brief at 4.

Appellant claims on appeal that the trial court erred in denying his motion to suppress because the officers lacked reasonable suspicion that he was engaged in criminal activity when they surrounded his vehicle at the Franklin Mills Mall. We review such claims under a familiar standard and scope of review.

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and

---

[3] Appellant filed a notice of appeal to this Court on August 27, 2013. The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on or before October 8, 2013. Appellant timely complied, preserving the lone issue raised in his brief. Thereafter, the trial court issued its opinion under Pa.R.A.P. 1925(a) on March 31, 2014.

may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Ranson*, 2014 WL 5018477, *2 (Pa. Super. 2014) (internal citations and quotations omitted).

Neither Appellant nor the Commonwealth dispute that the officers conducted an investigative detention when they surrounded and stopped Appellant's vehicle at the Franklin Mills Mall. We agree with the litigants that, under these circumstances, an investigative detention occurred at this moment since a reasonable person in Appellant's position would not have felt free to terminate the encounter. *See Commonwealth v. Cruz* 21 A.3d 1247, 1250 (Pa. Super. 2011) ("forcible stop of a vehicle constitutes an investigative detention") (citation omitted). Our task in this appeal, then, is to determine whether, under the totality of circumstances, the officers possessed reasonable suspicion to detain Appellant's automobile for investigative purposes. *See id.* (officer must establish reasonable suspicion that criminal activity is under way to support investigative vehicle detention).

"An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the

functional equivalent of an arrest.  Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion." **Commonwealth v. Wiley**, 858 A.2d 1191, 1194 (Pa. Super. 2004) (citation omitted), *appeal granted*, 875 A.2d 1075 (Pa. 2005), *appeal dismissed as improvidently granted*, 904 A.2d 905 (Pa. 2006).

We recently elaborated upon the nature and scope of the Commonwealth's burden in establishing reasonable suspicion for purposes of a constitutionally[4] valid investigatory detention.

> The reasonable suspicion necessary to conduct [an] investigative detention[ is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.]
>
> The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances.  In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience.  Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct.  Rather, even a

---

[4] It is immaterial whether we review Appellant's claim under the Pennsylvania Constitution or the United States Constitution since the substantive search and seizure standards are the same.  **See In the Interest of D.M.**, 781 A.2d 1161, 1163 (Pa. 2001).

combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Davis*, 2014 WL 5140282, *2-3 (Pa. Super. 2014) (internal citations, quotation marks, and indentations omitted). In examining the quality and quantity of the information that prompted a stop, we look only to the facts available when an officer conducts the detention, and not to evidence or facts uncovered during an ensuing search. *Wiley*, 858 A.2d at 1194.

Appellant argues that the Commonwealth failed to demonstrate reasonable suspicion because it did not establish the source, reliability, and basis of knowledge upon which the detaining officers relied in stopping Appellant's vehicle. *See* Appellant's Brief at 8. Specifically, Appellant claims that:

Officers Carter and Devlin [] conducted an investigatory vehicle stop of the silver Monte Carlo based on information from the Bensalem Police Department that the driver of a silver Monte Carlo was wanted on several body warrants and was involved in illegal drug activity. No further information was presented at the suppression hearing regarding the underlying source or reliability of this information. No one from the Bensalem Police Department appeared to testify as to the reliability of this information or how the originator of this information knew [Appellant] was wanted or was involved in drug activity. No one from the Philadelphia Police Department testified as to the underlying source, reliability or basis of knowledge of the dispatch passed along to them by the Bensalem Police Department.

*Id.* at 14. Analogizing the present case to one in which officers respond to an anonymous call, Appellant argues that the predictive component of the

- 7 -

information conveyed to Officers Carter and Devlin (relating to where and when Appellant's vehicle would arrive at Franklin Mills Mall) was insufficient, without additional corroboration, to establish reasonable suspicion. *Id.* at 16-17.

The Commonwealth responds that the trial court properly denied suppression. The Commonwealth argues that there is no *per se* rule requiring an underlying informant to testify at a suppression hearing if the testifying officers offer sufficient grounds to enable the court to assess the legality of their actions. Commonwealth's Brief at 7. Moreover, the Commonwealth characterizes this case as one in which a tip received from a known source (here, fellow officers from another police department) was corroborated through the independent investigation and surveillance of the officers. *Id.* at 10-11. The Commonwealth also argues that the tip upon which the detaining officers relied involved precise insider information concerning criminal activity, including a prediction about the arrival of Appellant's vehicle at an appointed location and at a designated time. The Commonwealth buttresses this latter point by noting that the officers received information about a mid-transaction change in the location where Appellant's automobile would arrive. According to the Commonwealth, this aspect of the information relied upon by the detaining officers made their informant's tip more like an on-going report of a specific crime-in-progress that warranted an immediate investigatory stop. *Id.* at 13.

It is well-settled in Pennsylvania that a police officer need not personally observe the illegal or suspicious behavior that forms the basis for reasonable suspicion. *Wiley*, 858 A.2d at 1194; *Commonwealth v. Korenkiewicz*, 743 A.2d 958, 963 (Pa. Super. 1999); *Commonwealth v. Wright*, 672 A.2d, 826, 830 (Pa. Super. 1996). An officer is justified in stopping a vehicle in reliance upon information conveyed by another officer within the chain of command who possesses reasonable suspicion. *Commonwealth v. Washington*, 63 A.3d 797, 802 (Pa. Super. 2013); *Cruz*, 21 A.3d at 1250 ("[E]ven where the officer who performs the stop does not have reasonable suspicion, the stop is nonetheless valid if the radio officer requesting the stop has reasonable suspicion."); *Commonwealth v. Anthony*, 977 A.2d 1182, 1187 (Pa. Super. 2009) ("Pennsylvania law permits a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion."). The officer with reasonable suspicion need not convey all background information to the officer who actually effectuates the stop, so long as the Commonwealth establishes at the suppression hearing that someone in the chain of command had reasonable suspicion before the detention. *Wiley*, 858 A.2d at 1197 n.4.

Where reasonable suspicion offered in support of an automobile stop emanates from information furnished by a tipster, this Court has explained:

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its

degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. However, a tip from an informer known to the police may carry enough indicia or reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so.

Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

**Washington**, 63 A.3d at 803, *quoting* **Commonwealth v. Barber**, 889 A.2d 587, 593-594 (Pa. Super. 2005). Where a tip foretells future actions that are not easily or ordinarily predicted, police corroboration of the prediction itself can supply officers with reasonable suspicion that criminal activity, such as the transportation of illicit drugs, is afoot. **Commonwealth v. Fell**, 901 A.2d 542, 545 (Pa. Super. 2006).

The record confirms the trial court's conclusion that the officers possessed the requisite reasonable suspicion to justify an investigative

detention of Appellant's vehicle. At Appellant's suppression hearing, Officer Devlin testified that he was a 14-year veteran of the police force with eight years of experience in narcotics enforcement. N.T., 5/20/13, at 5. At approximately 7:30 p.m. or 7:40 p.m. on February 23, 2012, he was present at the Franklin Mills Mall to assist the Bensalem Police Department with an investigation into a drug delivery service. *Id.* at 5-6. Bensalem police conveyed specific information to Officer Devlin to enable him to assist in the investigation, including a description of the vehicle employed by the service, the location of its anticipated arrival, and the identity of the individual who was expected to make the delivery. *Id.* at 7. Officer Carter confirmed that Bensalem police advised him and Officer Devlin that they would encounter a man in a vehicle transporting narcotics packaged for sale when he approached a specific location. *Id.* at 23. Officer Devlin testified that the original anticipated arrival location was near the JC Penny store but that a new arrival point (the Dave and Busters restaurant) had been selected because of police presence. *Id.* at 8. As the Bensalem police predicted, a silver Monte Carlo arrived at the Dave and Busters restaurant at 7:40 p.m., the anticipated time.[5] *Id.* at 9. These facts show that Officers Devlin and Carter acted in reliance upon insider information regarding the predicted

---

[5] Appellant was operating the vehicle instead of the individual anticipated by the Bensalem police.

arrival of the silver Monte Carlo at a designated place and time, which the officers corroborated through their own surveillance efforts.

The cases cited by Appellant and other decisions issued by our appellate courts do not convince us that the trial court erred in denying his suppression motion. By way of example, Appellant primarily relies on **Commonwealth v. Queen**, 639 A.2d 443 (Pa. 1994). In **Queen**, an officer conducted a **Terry**[6] stop and frisk of the defendant based exclusively upon a detective's statement that he matched the description of an individual suspected in a robbery. The detaining officer did not conduct any independent investigation. The detective did not testify at the suppression hearing and the officer revealed that the detective never communicated the facts upon which he relied in concluding that the defendant was involved in the robbery. The Supreme Court in **Queen** held that the investigative detention was invalid because the detective's unsupported assertion was the sole basis offered to support the officer's actions and, therefore, the suppression court was required to speculate as to whether reasonable suspicion justified the intrusion. Other cases cited by Appellant involved similar situations in which the detaining officers acted solely upon information supplied by third parties and without independent investigation or corroboration. **See Commonwealth v. Hawkins**, 692 A.2d 1068 (Pa.

_____

[6] **Terry v. Ohio**, 392 U.S. 1 (1968).

1997) (detention deemed unlawful where officer acted exclusively upon anonymous and unverifiable tip communicated through police radio call); *see also Commonwealth v. Stevenson*, 832 A.2d 1123 (Pa. Super. 2003) (vehicle stop invalidated where officer made no independent inquiry and acted upon stale information about driver and unsubstantiated radio broadcast concerning driver's possible involvement in drug activity); *Commonwealth v. Boyer*, 345 A.2d 187 (Pa. Super. 1975) (vehicle stop unjustified where information relayed by teletype lacked indicia of reliability and defendant's vehicle did not match description). Because the information in this case emanated from a known source and was corroborated by independent surveillance, the foregoing cases cited by Appellant are not controlling.

In addition, the surveillance activities performed by Officers Devlin and Carter confirmed the predictive accuracy of the inside information upon which they relied. Thus, this case is readily distinguishable from *Commonwealth v. Goodwin*, 750 A.2d 795 (Pa. 2000) and *Commonwealth v. Wimbush*, 750 A.2d 807 (Pa. 2000), wherein our Supreme Court invalidated stops that did not involve the type of unique predictive information that we find present in this case. *See Fell*, 901 A.2d at 546 (distinguishing between tips that involve normal, public routines such as those in *Goodwin* and *Wimbush* which cannot support reasonable suspicion and confirmed tips revealing insight into an individual's private

itinerary that can reliably support an officer's inference of on-going criminal activity). Since the observations of the officers confirmed an inside source for the information about an on-going drug delivery service and its anticipated drop-off point on the evening in question, we conclude that the officers possessed reasonable grounds to suspect that criminal activity was afoot. Hence, Appellant is not entitled to relief on his drug convictions.

We turn now to consider the legality of Appellant's mandatory minimum sentence under 18 Pa.C.S.A. § 7508(a)(3)(ii). Although the Commonwealth is correct that Appellant has not raised any issue relating to the legality of his sentence, **see** Commonwealth's Brief at 5 n.1, we note that "[l]egality of sentence questions are not waivable and may be raised *sua sponte* [on direct review] by this Court." **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*). Moreover, this Court recently held that "a challenge to a sentence premised upon [**Alleyne v. United States**, 133 S.Ct. 2151 (U.S. 2013)] . . . implicates the legality of the sentence and cannot be waived on appeal." **Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*). Because, as explained below, we are constrained by recent decisions of this Court to conclude that Appellant's sentence under § 7508 is unlawful, we are required to vacate Appellant's judgment of sentence and remand for resentencing.

The jurisprudence of mandatory minimum sentencing in this Commonwealth is rapidly changing and is currently in a great state of flux.[7] We briefly review the decisional law that led this Court to declare in **Newman** and its progeny that various statutes in Pennsylvania's mandatory minimum sentencing scheme do not pass constitutional muster.

In **Apprendi v. New Jersey**, 530 U.S. 466 (2000), the United States Supreme Court held: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." **Apprendi**, 530 U.S. at 489. Thereafter, in **Alleyne**, the United States Supreme Court expanded "**Apprendi's** basic jury-determination rule to mandatory minimum sentences." **Alleyne**, 133 S.Ct. at 2167 (Breyer, J., concurring). Specifically, the **Alleyne** Court held that, where an "aggravating fact" increases a mandatory minimum sentence, "the fact is an element of a distinct and aggravated crime. [The fact] must, therefore, be submitted to the jury and found beyond a reasonable doubt." **Alleyne**, 133 S.Ct. at 2162-2163.

Following **Alleyne**, an *en banc* panel from this Court decided **Watley**, *supra*. In **Watley**, a jury found Mr. Watley guilty of PWID and firearm

---

[7] Recently, in light of **Newman**, this court issued an order granting *en banc* reargument to consider the constitutionality of a mandatory minimum sentence under Section 7508. **See Commonwealth v. Velez**, 350 MDA 2014 (Pa. Super. October 27, 2014).

offenses. The trial court then sentenced Mr. Watley to a mandatory minimum sentence pursuant to 18 Pa.C.S.A. § 9712.1 for being convicted of PWID when, "at the time of the offense[,] the [defendant] . . . [wa]s in physical possession or control of a firearm." 18 Pa.C.S.A. § 9712.1(a); *Watley*, 81 A.3d at 112-113.

Section 9712.1 enumerates certain substantive "aggravating facts" in Section 9712.1(a) and, in Section 9712.1(c), the statute declares the burdens of production and proof, as well as the procedures for alleging and proving the aggravating facts. In relevant part, Section 9712.1 reads:

> **(a) Mandatory sentence.--**Any person who is convicted of a violation of [35 P.S. § 780-113(a)(30) ("PWID")], when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement.
>
> . . .
>
> **(c) Proof at sentencing.--**Provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S.A. § 9712.1.

- 16 -

Although the **Watley** Court declared that 18 Pa.C.S.A. § 9712.1 was "no longer constitutionally sound in light of **Alleyne**," the **Watley** Court held that the defendant's mandatory minimum sentence was nevertheless legal, as the jury also found the defendant guilty of two firearms offenses. **Watley**, 81 A.3d at 120-121. Thus, the panel in **Watley** held that **Alleyne** was satisfied because "the uncontroverted evidence in the instant case established that one firearm was located in the same glove compartment as the drugs and another handgun was located on the passenger-side floor in close proximity to the drugs, and the jury determined beyond a reasonable doubt that Appellant possessed those firearms." **Watley**, 81 A.3d at 121. In so holding, the **Watley** Court explicitly determined that the "aggravating facts," contained in Section 9712.1(a), were "derive[d] wholly from the jury's verdict."[8] The **Watley** Court also implicitly, but necessarily, determined that the unconstitutional portions of Section 9712.1 – found in subsection (c) of the statute – were severable from the remainder of the statute. **See** 1 Pa.C.S.A. § 1925 (regarding the severability of statutes).

---

[8] Support for the approach adopted by the **Watley** court emerges from a decision in the **Apprendi** line of cases. **See Blakely v. Washington**, 542 U.S. 296, 303-304 (2004) (observing that "statutory maximum" for **Apprendi** purposes represents the maximum sentence that can be imposed on the basis of facts reflected in a jury's verdict or admitted by the defendant). Although the pronouncement in **Blakely** came in the context of a determination of the statutory maximum, the statement reflects a common sense assessment that the defendant's right to a jury trial cannot be violated where he either admits the relevant facts or the jury necessarily made the findings relevant to the punishment that is ultimately imposed.

Following **Watley**, an *en banc* panel from this Court decided **Newman**. In **Newman**, the defendant was convicted of PWID and sentenced to the mandatory minimum sentence under Section 9712.1. **Newman**, 99 A.3d at 89. As quoted above, Section 9712.1 provides a five-year mandatory minimum term of incarceration for PWID when, "at the time of the offense[,] the [defendant] . . . [wa]s in physical possession or control of a firearm." 18 Pa.C.S.A. § 9712.1(a). On appeal, Mr. Newman claimed that **Alleyne** rendered his mandatory minimum sentence illegal, because – in his case – the trial court had determined the "aggravating facts" by a mere preponderance of the evidence. **Newman**, 99 A.3d at 89.

The **Newman** Court held that Section 9712.1(c) was unconstitutional and that the subsection was not severable from the remainder of the statute. Thus, **Newman** declared that the mandatory minimum sentencing scheme found in Section 9712.1 was unconstitutional in its entirety. The Court held:

> We find that Subsections (a) and (c) of Section 9712.1 are essentially and inseparably connected. Following **Alleyne**, Subsection (a) must be regarded as the elements of the aggravated crime of possessing a firearm while trafficking drugs. If Subsection (a) is the predicate arm of Section 9712.1, then Subsection (c) is the "enforcement" arm. Without Subsection (c), there is no mechanism in place to determine whether the predicate of Subsection (a) has been met.

**Newman**, 99 A.3d at 101.[9]

Further, the **Newman** Court concluded that trial courts may not create their own procedures for imposing mandatory minimum sentences in place of the procedures contained in Section 9712.1(c). **Id.** at 102. According to **Newman**, doing so would constitute an impermissible act of legislation by the courts. **Newman** declared that "it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**." **Newman**, 99 A.3d at 102. The **Newman** Court thus vacated Mr. Newman's judgment of sentence and remanded the case for resentencing "without consideration of any mandatory minimum sentence." **Id.** at 103.

**Newman** was followed by our opinion in **Commonwealth v. Valentine**, 2014 WL 4942256 (Pa. Super. 2014). In **Valentine**, the Commonwealth charged Mr. Valentine with a number of crimes, including robbery. In an attempt to avoid the mandatory minimum sentencing issues recognized by **Alleyne** and its progeny, the Commonwealth amended the

---

[9] The concurring opinion in **Newman** agreed with majority in holding that Mr. Newman's mandatory minimum sentence was illegal under **Alleyne** and that we were required to vacate Mr. Newman's judgment of sentence and remand for resentencing. **Newman**, 99 A.3d at 104 (Mundy, J. concurring). However, the concurring judges concluded that the majority erred when it struck down the entirety of Section 9712.1 as unconstitutional. Specifically, the concurrence opined, "the [m]ajority's voiding Section 9712.1 in its entirety is contrary to the Statutory Construction Act, **Watley**, and beyond the scope of **Alleyne's** mandate." **Id.** at 106.

criminal information "to include the allegation that [Mr. Valentine] visibly possessed a firearm, for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712, and to specify that [Mr. Valentine's] offenses were committed in or near public transportation for purposes of the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9713." *Valentine*, 2014 WL 4942256 at *1.

The jury found Mr. Valentine guilty of robbery. The jury also specifically found, beyond a reasonable doubt, all of the substantive, aggravating facts contained 42 Pa.C.S.A. §§ 9712 and 9713. *Valentine*, 2014 WL 4942256 at *1. As a result, the trial court sentenced Mr. Valentine to the mandatory minimum term of five to ten years in prison for robbery, in accordance with Sections 9712 and 9713.[10] *Id.*

---

[10] 42 Pa.C.S.A. §§ 9712 and 9713 have the same structure as the earlier-discussed 42 Pa.C.S.A. § 9712.1. In relevant part, Section 9712 reads:

> **(a) Mandatory sentence.--**Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

*(Footnote Continued Next Page)*

J-S62016-14

**(b) Proof at sentencing.--**Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S.A. § 9712.

Section 9713 declares, in relevant part:

**(a) Mandatory sentence.--**Except as provided under section 9716 (relating to two or more mandatory minimum sentences applicable), any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) (relating to sentences for second and subsequent offenses), shall be sentenced to a minimum sentence of at least five years of total confinement if the crime occurs in or near public transportation as defined in subsection (b), notwithstanding any other provision of this title or other statute to the contrary.

. . .

**(c) Proof at sentencing.--**Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

Mr. Valentine filed a direct appeal to this Court, wherein he claimed that **Newman** rendered Sections 9712 and 9713 unconstitutional in their entirety. **Id.** at *2. According to Mr. Valentine, since the entirety of the mandatory minimum sentencing statutes were unconstitutional, his mandatory minimum sentence was illegal – notwithstanding the fact that the Commonwealth charged him with the necessary aggravating facts in the information and the jury found the aggravating facts at trial, beyond a reasonable doubt. **Id.** at *6.

A panel of this Court in **Valentine** concluded that, pursuant to **Newman**, Sections 9712 and 9713 were wholly unconstitutional. Therefore, the panel in **Valentine** concluded that Mr. Valentine's sentence was illegal and that it was required to vacate his judgment of sentence and remand for resentencing "without consideration of any mandatory minimum sentence." **Valentine**, 2014 WL 4942256 at **8-9. The **Valentine** Court reasoned:

> The trial court erroneously presupposed that only [Subsection (b) of 9712 and] Subsection[] (c) of . . . 9713 (which permit a trial judge to enhance the sentence based on a preponderance of the evidence standard) were unconstitutional under **Alleyne**, and that Subsections (a) of 9712 and 9713 survived constitutional muster. By asking the jury to determine whether the factual prerequisites set forth in § 9712(a) and § 9713(a) had been met, the trial court effectively determined that the unconstitutional provisions of [§ 9712(b)] and § 9713(c) were

*(Footnote Continued)* ————————

42 Pa.C.S.A. § 9713.

severable. Our decision in **Newman** however holds that the unconstitutional provisions of [§ 9712(b)] and § 9713(c) are not severable but "essentially and inseparably connected" and that the statutes are therefore unconstitutional as a whole. . . .

Moreover, **Newman** makes clear that "it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following **Alleyne**." [**Newman**, 99 A.3d at 102]. Therefore, the trial court lacked the authority to allow the jury to determine the factual predicates of §§ 9712 and 9713. **See** [**Newman**, 99 A.3d at 102-104] (recognizing that several trial courts of this Commonwealth have found Section 9712.1 as a whole to be no longer workable without legislative guidance).

Because **Alleyne** and **Newman** render §§ 9712 and 9713 unconstitutional, we vacate the judgment of sentence and remand for the re-imposition of sentence without consideration of any mandatory minimum sentence as provided by §§ 9712 and 9713.

**Valentine**, 2014 WL 4942256 at **8-9.

Given the dispositions and reasoning adopted and applied in **Newman** and **Valentine**, we are obligated to follow this precedent and, in so doing, constrained to conclude that 18 Pa.C.S.A. § 7508 is unconstitutional in its entirety and that Appellant's mandatory minimum sentence under 18 Pa.C.S.A. § 7508 is illegal.[11] Certainly, 18 Pa.C.S.A. § 7508[12] is structured

---

[11] Appellant is entitled to the retroactive application of **Alleyne**. **Commonwealth v. Cabeza**, 469 A.2d 146, 148 (Pa. 1983) ("where an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal"); **Newman**, 99 A.3d at 90 (holding that **Alleyne** is to be

*(Footnote Continued Next Page)*

*(Footnote Continued)* _____

applied retroactively to cases pending on direct appeal). Further, since we have held that an ***Alleyne*** issue "implicates the legality of the sentence and cannot be waived on appeal," we must *sua sponte* determine whether Appellant's mandatory minimum sentence is illegal under ***Alleyne***. ***Newman***, 99 A.3d at 90-91.

[12] Relevant to this case, 18 Pa.C.S.A. § 7508 provides:

> **(a) General rule.**--Notwithstanding any other provisions of this or any other act to the contrary, the following provisions shall apply:
>
> > (3) A person who is convicted of violating [35 P.S. § 780-113(a)(30) ("PWID")] . . . where the controlled substance is [cocaine] shall, upon conviction, be sentenced as set forth in this paragraph:
> >
> > . . .
> >
> > (ii) when the aggregate weight of the compound or mixture containing the substance involved is at least ten grams and less than 100 grams; three years in prison and a fine of $15,000[.00] or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity. . . .
>
> . . .
>
> **(b) Proof of sentencing.**--Provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

18 Pa.C.S.A. § 7508(a)(3)(ii) and (b).
*(Footnote Continued Next Page)*

in the same manner as the statutes that were at issue in **Newman** and **Valentine** – and, as was true with the statutes at issue in **Newman** and **Valentine**, one particular subsection of 18 Pa.C.S.A. § 7508 is clearly unconstitutional under **Alleyne**. **See** 18 Pa.C.S.A. § 7508(b). In particular, Section 7508(b) contains the following unconstitutional burdens and procedures: it declares that the substantive, "aggravating facts" contained in Section 7508(a) are "not . . . an element of the crime;" it declares that notice of either the "aggravating facts" or of the applicability of the mandatory minimum sentencing statute is "not . . . required prior to conviction;" it declares that the applicability of the mandatory minimum statute "shall be determined at sentencing;" it declares that the Commonwealth need only prove the "aggravating facts" by a preponderance of the evidence; and, it declares that a judge – and not a jury – is to act as the fact-finder for purposes of determining the "aggravated facts." 18 Pa.C.S.A. § 7508(b). **Alleyne** has rendered all of these burdens and procedures unconstitutional.

Pursuant to **Newman** and **Valentine**, we are constrained to conclude that the unconstitutional portion of 18 Pa.C.S.A. § 7508 is unseverable from the remainder of the statute.[13] Hence, as we are without power to create or

_(Footnote Continued)_ ───────────────

[13] **Watley** allows a trial court to infer, from a jury's verdict (and presumably from admissions or stipulations made by a defendant), that the mandatory
_(Footnote Continued Next Page)_

- 25 -

apply a sentencing procedure that would permit imposition of a mandatory minimum sentence that passes constitutional muster, we must vacate Appellant's judgment of sentence and remand for resentencing, without consideration of the mandatory minimum sentence.

Appellant's convictions for possession with intent to distribute and knowing and intentional possession of a controlled substance affirmed. Judgment of sentence vacated. Case remanded for resentencing only. Jurisdiction relinquished.

*(Footnote Continued)* ――――――――

minimum sentencing factors have been found beyond a reasonable doubt. Under *Newman* and *Valentine*, however, this Court has held that certain mandatory minimum sentencing statutes were unconstitutional in their entirety and that the trial courts lack the power to adopt procedures to impose sentences under the challenged statutes. Although there is precedent from this Court where an *en banc* Superior Court panel has overruled an earlier *en banc* Superior Court panel opinion, that has not occurred here. *See Commonwealth v. Johnson*, 690 A.2d 274, 257 (Pa. Super. 1997) (*en banc*) (expressly overruling the earlier *en banc* Superior Court opinion in *Commonwealth v. Garcia*, 588 A.2d 951 (Pa. Super. 1991) (*en banc*)). As a result, our rulings in *Newman* and *Valentine* are irreconcilable with our ruling in *Watley*, which has not been overruled and remains valid law. We conclude, however, that vacating Appellant's sentence and remanding for resentencing is consistent with *Newman* and *Valentine*, and will not offend *Watley*; thus, we elect to take this course.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/25/2014