J-S06011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRYL JOHNSON, | |
| Appellant | No. 1564 EDA 2014 |

Appeal from the Judgment of Sentence Entered April 24, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000835-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED FEBRUARY 02, 2015**

Appellant, Darryl Johnson, appeals from the judgment of sentence of an aggregate term of 54 to 120 months' incarceration, followed by 10 years' probation, imposed after he was convicted of persons not to possess a firearm, carrying a firearm without a license, and conspiracy to commit robbery.  Appellant challenges the sufficiency of the evidence to sustain his convictions.  After careful review, we affirm.

Appellant and his co-defendant, Phillip Freeman, were arrested on October 19, 2012.  Appellant was charged with the above-stated offenses,

_____

[*] Former Justice specially assigned to the Superior Court.

and he and Freeman proceeded to a jury trial on February 4, 2014.[1]  The

trial court summarized the facts established at trial as follows:

> On October 19, 2012, at 2:00 A.M., David Davis
> (hereinafter referred to as "Mr. Davis" or "Victim") was returning
> to his residence after leaving the Harrah's Casino in the City of
> Chester.  Mr. Davis was coming home via a bus that dropped
> him off at the corner of Third and Kerlin Streets, City of Chester.
> After he exited the bus, Mr. Davis proceeded north on Kerlin
> Street.  Mr. Davis was enroute [sic] to West Tenth Street.  As
> Mr. Davis was proceeding north on Kerlin Street, a silver Sports
> Utility Vehicle (hereinafter referred to as "SUV") turned onto
> Kerlin Street from Fifth Street.  While Mr. Davis crossed this
> intersection, this motor vehicle stopped, and one of the
> individuals inside the SUV called out to him.  Mr. Davis turned to
> face the vehicle and was instructed by the unknown voice from
> within the motor vehicle to come over to the silver SUV.  Mr.
> Davis informed the occupants of the motor vehicle that he did
> not have time to come over to the silver SUV, and that at that
> early hour of the morning he did not wish to speak to anyone.
> The driver then brandished a firearm and held it outside the
> window[,] forcing Mr. Davis at gunpoint to approach the motor
> vehicle.  During this initial interaction, Mr. Davis was about
> fifteen (15) to twenty (20) feet from the SUV.
>
> As Mr. Davis approached the motor vehicle, he observed a
> young black male with a medium complexion sitting in the
> driver's seat of the silver SUV continuing to aim a firearm at him.
> Mr. Davis determined that the individual in the driver's seat of
> the motor vehicle was the same person who had previously
> demanded he come over to the SUV.  Mr. Davis believed the
> driver was in some way intoxicated based upon a chemical odor
> emanating from him[,] and [based upon] the driver's demeanor.
> At trial, Mr. Davis identified the gun wielding driver of the silver
> SUV as co-Defendant Freeman.

---

[1] Appellant waived his right to a jury trial for the charge of persons not to
possess a firearm.  The nonjury trial for that charge was conducted
contemporaneously with Appellant's jury trial on the remaining charges.

Mr. Davis also observed an individual in the front passenger seat of the motor vehicle. The passenger of the silver SUV was also a young black male who was wearing a red baseball cap, dressed in dark clothing, and had a beard. Mr. Davis at trial identified this occupant of the motor vehicle as [Appellant]. Mr. Davis advised the court that [Appellant] never spoke during the course of the robbery. There were two (2) additional voices[23] coming from the backseat of the silver SUV[.] Mr. Davis described these two (2) voices as sounding as though they were the orchestrators of the robbery.

[23] At the time of their arrest, [Appellant and Freeman] were the only two (2) individuals inside the motor vehicle.

Mr. Davis quickly surrendered forty-one dollars ($41.00) to the driver of the motor vehicle, co-Defendant Freeman. Mr. Davis testified that the denomination of the forty-one dollars ($41.00) was two (2) twenty dollar ($20.00) bills and a single one dollar ($1.00) bill. On Mr. Davis['] turning over his cash to the driver, the silver SUV pulled away and traveled south on Kerlin Street. Mr. Davis continued north on Kerlin Street and contacted the police.

Responding to his emergency call, Officer Kyle Battinieri arrived and met with Mr. Davis somewhere between Seventh and Ninth Streets. As Mr. Davis was explaining the robbery to Officer Battinieri, the officer was dispatched to another incident. Officer Battinieri instructed Mr. Davis to proceed northbound to Ninth and Kerlin Streets to a Sunoco gas station where he would rendezvous with him. Shortly after this first interaction, Officer Battinieri again met with Mr. Davis at the nearby Sunoco station, [at] Ninth and Kerlin Streets. Officer William Dowd soon also arrived. While Mr. Davis was explaining the robbery to the responding officers, Officer Dowd pointed to a vehicle in the gas station parking lot that matched the description of the involved motor vehicle Mr. Davis was then relaying to the two (2) officers. Mr. Davis confirmed that the vehicle observed by Officer Dowd was the SUV used during the robbery. Mr. Davis then saw an individual walking to the vehicle that was dressed in a similar manner to the firearm brandishing driver. This individual entered the SUV's driver [side] door. Officer Dowd in his marked police car began to drive over to the silver SUV. When Officer Dowd approached this vehicle, it left the gas station, prompting Officer Dowd to proceed after the SUV.

Officer Dowd pursued the motor vehicle and conducted a stop at Tenth and Butler Streets. On Officer Dowd['s] approaching from the rear [] driver's side of the silver SUV, he observed the front passenger side door open and the passenger begin to exit the vehicle. With his firearm drawn[,] Officer Dowd ordered the passenger to reenter the motor vehicle. The passenger followed this instruction and returned within the SUV. At trial, Officer Dowd identified the driver as co-Defendant Freeman and the sole passenger as [Appellant]. After additional police personnel arrived on the scene, Officer Mark Barag instructed [Appellant] to step out of the motor vehicle. A pat-down or frisk of [Appellant] was done. There were no weapons found on [Appellant's] person.

The driver of the vehicle, co-Defendant Freeman, necessitated police removal from the silver SUV due to his failure to comply with the officer[s'] directives of exiting the motor vehicle and making visible to the officers his hands. Co-Defendant Freeman was unable to stand on his own when he was finally outside the silver SUV. Because of co-Defendant Freeman['s] constantly moving and continuing to hide his hands from officers' view, a canine unit was released to subdue him. Eventually, with the help of the police canine the officers were able to control co-Defendant Freeman. A pat-down was conducted of the co-Defendant that did not reveal any firearms. At no point during the struggle with co-Defendant Freeman did Officer Barag observe co-Defendant Freeman remove a weapon and/or slide anything under the vehicle to the passenger side of the SUV.

After helping secure the co-Defendant, Officer Barag returned to the passenger side of the vehicle and proceeded to look underneath the silver SUV. It was then that he observed a firearm on the pavement located directly beneath the passenger seat, about six (6) inches to one (1) foot underneath the motor vehicle on the front passenger side. Officer Barag informed Officer Johnathan Ross of the firearm. Officer Ross retrieved the firearm from under the motor vehicle. After securing the firearm, Officer Ross determined that the handgun was loaded and a bullet was in the chamber of the firearm. Officer Ross found the firearm completely dry, despite it having been raining previous[ly] that night[,] as well as at the time of the stop.

[Appellant and Freeman] were arrested and subsequently processed at the Chester police station by … Officer Roosevelt

Turner. The property that was found on [Appellant's] person during a search at the police station included: A baseball cap; [a] blue coat; [s]hoelaces; [a] belt[;] [f]orty-six dollars ($46.00) in cash; and [t]welve cents (12¢) in change. The Chester Police Department Property Record recounted the denomination of the currency retrieved from [Appellant] as two (2) twenty dollar ($20.00) bills and six (6) one dollar ($1.00) bills. Officer Turner additionally recovered three (3) bullets from [Appellant's] coat pocket.

When Officer Turner next approached co-Defendant Freeman to conduct his custodial search, Officer Turner saw what on first view appeared to be "trash" in the immediate vicinity of where co-Defendant Freeman was sitting. On closer inspection, this "trash" was a torn-up box of ammunition. The box was for twenty-two (.22) caliber bullets. Officer Turner also noticed bullets on the floor surrounding co-Defendant Freeman and in a trashcan located near the co-Defendant. These unspent projectiles matched the bullets seized from co-Defendant Freeman's person. These bullets were as well identical to the bullets found on [Appellant] and those within the firearm recovered at the scene of [Appellant's and Freeman's] arrests.

Trial Court Opinion, 7/18/14, at 8-12 (citations to the record omitted).

Appellant stipulated at trial that he did not have a license to carry a firearm, and that he is a person who is prohibited from possessing a firearm under 18 Pa.C.S. § 6105. Based on these stipulations and the above-stated facts, Appellant was convicted of possessing a firearm without a license, persons not to possess a firearm, and criminal conspiracy to commit robbery. On April 24, 2014, Appellant was sentenced to a term of 54 to 120 months' incarceration for persons not to possess a firearm, a concurrent term of 42 to 84 months' incarceration for possessing a firearm without a license, and a consecutive term of 10 years' probation for conspiracy to commit robbery.

Appellant filed a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents two questions for our review:

> 1) Whether the evidence was insufficient to sustain the conviction for the charges of persons not to possess firearms and firearms not to be carried without a license since the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant] actually or constructively possessed the firearm at issue herein[?]
>
> 2) Whether the evidence was insufficient to sustain the conviction for conspiracy to [commit] robbery since the Commonwealth failed to prove, beyond a reasonable doubt, that [Appellant], with the intent of promoting or facilitating the commission of a crime, agreed with other persons to commit a robbery or took an overt act in furtherance of that crime[?]

Appellant's Brief at 5 (unnecessary italicization omitted).

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant first challenges the sufficiency of the evidence to sustain his two firearm offenses, arguing that the Commonwealth failed to prove that he actually or constructively possessed a gun. Namely, Appellant argues that it

was Freeman who possessed the gun during the robbery, and when the SUV was stopped by police, Freeman struggled with the officers "on the ground near the vehicle[,]" making it more likely that he discarded the firearm under the vehicle. Appellant's Brief at 15-16.

We agree with Appellant that the evidence did not establish that he actually possessed the firearm; however, we disagree with his assertion that the evidence failed to prove he constructively possessed the gun discovered under the SUV when it was stopped by police.

> Illegal possession of a firearm may be shown by constructive possession. **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa. Super. 2004).
>
>> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." (citation omitted). We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." (citation omitted). To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> **Id.**, quoting **Commonwealth v. Thompson**, 779 A.2d 1195, 1199 (Pa. Super. 2001), appeal denied, 567 Pa. 760, 790 A.2d 1016 (2001).

**Commonwealth v. Cruz**, 21 A.3d 1247, 1253 (Pa. Super. 2011).

Here, there was sufficient evidence to prove, beyond a reasonable doubt, that Appellant constructively possessed the weapon found underneath the vehicle. Specifically, when the vehicle was stopped by police, Appellant opened the door and partially exited the SUV, while

Freeman did not exit the vehicle until the officers were present outside. Additionally, while Freeman struggled with the officers, the police did not see him discard anything underneath the vehicle. The gun was ultimately found on the ground underneath the front passenger seat of the SUV where Appellant had been sitting, and near to where Appellant had partially exited the vehicle. The gun was dry, despite that it was raining, indicating that it was placed there during the stop of the SUV. Finally, police discovered in Appellant's pocket three bullets matching those found loaded in the gun. Based on the totality of these circumstances, it was reasonable for the jury to conclude that Appellant had the power and intent to control the gun, and that he in fact did so when he discarded it underneath the vehicle during the traffic stop. Consequently, his convictions for persons not to possess a firearm and possessing a firearm without a license are supported by sufficient evidence.

Appellant next challenges the sufficiency of the evidence to sustain his conspiracy conviction.

> To convict of criminal conspiracy, the evidence must establish that the defendant entered an agreement with another person to commit or aid in the commission of an unlawful act, that the conspirators acted with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. 18 Pa.C.S.A. § 903; **Commonwealth v. Johnson**, 719 A.2d 778, 784 (Pa. Super. 1998), *allocatur denied,* 559 Pa. 689, 739 A.2d 1056 (1999). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." **Commonwealth v. Swerdlow**, 431 Pa. Super. 453, 636 A.2d 1173, 1177 (1994).

> "An agreement sufficient to establish a conspiracy can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." ***Commonwealth v. Rivera***, 432 Pa. Super. 88, 637 A.2d 997, 998 (1994) (*en banc*).

***Commonwealth v. Geiger***, 944 A.2d 85, 90 (Pa. Super. 2008) (emphasis added).

In this case, Appellant avers that the Commonwealth failed to prove that he entered into an agreement with Freeman to rob the victim. He maintains that, instead, the evidence established only his mere presence in the vehicle when Freeman committed the robbery, which alone is insufficient to support his conspiracy conviction. ***See*** Appellant's Brief at 18-19 (citing, *inter alia*, ***Commonwealth v. Goodyear***, 344 A.2d 672 (Pa. Super. 1975) (finding that minor victim's testimony that Goodyear's co-defendant offered the victim marijuana while Goodyear was merely present was not enough to support a conspiracy conviction); ***Commonwealth v. Mercado***, 617 A.2d 342 (Pa. Super. 1992) (holding that Mercado's mere presence in a house when a controlled drug transaction was conducted, and when the house was later searched and contraband was discovered, was not sufficient to prove that he conspired to participate in the drug sale)). Indeed, Appellant contends that "[h]e was essentially trapped in the wrong vehicle at the wrong time, with an armed assailant who was apparently high on [drugs]." ***Id.*** at 20. He argues that his mere presence, even combined with the fact

"he remained in the vehicle after the crime was completed[,] does not indicate that he formed an agreement prior to the crime." *Id.*

Appellant disregards the totality of the other circumstances proven by the Commonwealth, which make this case distinguishable from the 'mere presence' cases of *Goodyear* and *Mercado*. In addition to proving that Appellant was present when Freeman robbed the victim at gunpoint, and that he remained with Freeman after the crime when the other occupants of Freeman's SUV dispersed (thus belying Appellant's claim that he was 'trapped' in the vehicle), the Commonwealth also proved that: (1) Appellant left with Freeman when the police approached the SUV at the gas station; (2) when Freeman's vehicle was ultimately stopped by the officers, Appellant attempted to conceal the weapon used in the robbery by discarding it under the vehicle; (3) at the time of his arrest, Appellant possessed several bullets matching those found in the gun; and (4) Appellant possessed cash in the same denominations as that taken from the victim, while Freeman had no cash in his possession.

Based on the totality of these circumstances, it was reasonable for the jury to conclude, beyond a reasonable doubt, that Appellant conspired with Freeman to rob the victim. While Appellant also avers that his conspiracy conviction cannot stand because he did not commit an overt act in furtherance of the robbery, it is obvious that Freeman did so by demanding money from the victim at gun-point. Accordingly, the overt act element of Appellant's conspiracy conviction was also satisfied. *See Commonwealth*

***v. McCall***, 911 A.2d 992, 996 (Pa. Super. 2006) (stating that the "overt act need not be committed by the defendant; it need only be committed by a co-conspirator").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2015