J-A09023-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| NAJEE EURE, | : | |
| | : | |
| Appellee | : | No. 2540 EDA 2014 |

Appeal from the Order July 31, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0002958-2014

BEFORE:  BOWES, DONOHUE and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED APRIL 21, 2015**

Appellant, the Commonwealth of Pennsylvania ("the Commonwealth"), appeals from the order entered on July 31, 2014, denying its motion for reconsideration of the trial court's order quashing the charge against Appellee, Najee Eure ("Eure"), of persons not to possess, use, manufacture, control, sell or transfer firearms.[1]  After careful review, we reverse the trial court's order and remand for trial.

The facts and procedural history of this case are as follows.  On the evening of February 11, 2014, Officer Matthew York ("Officer York"), along with two state parole agents and two police officers, visited Eure's home, located at 2603 Reed Street in Philadelphia, Pennsylvania.  Officer York was accompanying the parole agents on a parole compliance check for Eure, who

---

[1]  18 Pa.C.S.A. § 6105(a)(1).

was part of the Focused Deterrence Program as a convicted felon. During the visit, Officer York recovered a black and silver Ruger .45 caliber handgun from between the mattress and box spring of the bed in the middle upstairs bedroom of Eure's home.

On February 21, 2014, police arrested Eure, charging him with persons not to possess, use, manufacture, control, sell or transfer firearms. At a preliminary hearing on March 13, 2014, the Commonwealth presented the testimony of Officer York. At the conclusion of the preliminary hearing, the trial ordered Eure's case held for court. On June 10, 2014, Eure filed a motion to quash the charge against him, averring that the Commonwealth failed to present sufficient evidence at the preliminary hearing to sustain a prima facie case against Eure for the above-referenced charge. Motion to Quash, 6/10/14, ¶ 7. Specifically, Eure asserted that the Commonwealth failed to produce "any actual or direct evidence that [Eure] is the person who possessed the firearm found in the middle bedroom of the house." Memorandum in Support of Motion to Quash, 6/10/14, ¶ 2. Eure asserts that "[t]he Commonwealth believes that it has established a prima facie case through the circumstantial evidence that [because Eure] lives at that house, he and he alone must have possessed that gun." *Id.* Therefore, Eure contends, "[t]he Commonwealth is relying on a tenuous inference based on circumstantial evidence[,]" and "[t]hat inference is not enough sustain the Commonwealth's burden at the preliminary hearing." *Id.*

On June 12, 2014, the trial court granted Eure's motion to quash at the conclusion of a hearing on the motion. On June 20, 2014, the Commonwealth filed a motion for reconsideration of the trial court's order granting Eure's motion to quash. On July 14, 2014, the trial court vacated its June 12, 2014 order granting Eure's motion to quash, pending its determination of the Commonwealth's motion for reconsideration. On July 31, 2014, the trial court denied the Commonwealth's motion for reconsideration. On September 2, 2014, the Commonwealth filed a timely notice of appeal and concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure.

On appeal, the Commonwealth raises one issue for our review and determination: did the evidence at the preliminary hearing, viewed in the light most favorable to the Commonwealth, establish a prima facie case against Eure for the charge of persons not to possess, use, manufacture, control, sell or transfer firearms? Commonwealth's Brief at 1.

We begin by acknowledging our standard of review:

> [I]t is settled that the evidentiary sufficiency, or lack thereof, of the Commonwealth's prima facie case for a charged crime is a question of law as to which an appellate court's review is plenary. **See** [**Commonwealth v. Huggins**, 836 A.2d 862, 865 (Pa. 2003)]. Indeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, prima facie burden to make out the elements of a charged crime.

*Commonwealth v. Karetny*, 880 A.2d 505, 513 (Pa. 2005).

Furthermore, our Supreme Court has stated the following with regard to establishing a prima facie case:

> At the preliminary hearing stage of a criminal prosecution, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt, but rather, must merely put forth sufficient evidence to establish a prima facie case of guilt. *Huggins*, 836 A.2d at 866 (citing *Commonwealth v. McBride*, [] 595 A.2d 589, 591 ([Pa.] 1991)). A prima facie case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. *McBride*, 595 A.2d at 591 (citing *Commonwealth v. Wojdak*, [] 466 A.2d 991 ([Pa.] 1983)). Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury. *Huggins*, 836 A.2d at 866.

*Id.* at 513-14. "When deciding whether a prima facie case was established, we must view the evidence in the light most favorable to the Commonwealth, and we are to consider all reasonable inferences based on that evidence which could support a guilty verdict." *Commonwealth v. McCullough*, 86 A.3d 896, 898-99 (Pa. Super. 2014) (citation omitted). "The weight and credibility of the evidence is not a factor at this stage." *Id.* at 899 (quotations and citation omitted).

Section 6105(a)(1) defines the crime of persons not to possess, use, manufacture, control, sell or transfer firearms as follows:

- 4 -

**(a) Offense defined.—**

> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1). Importantly, the Commonwealth may prove illegal possession of a firearm by constructive possession. ***Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Id.*** (quotations and citations omitted).

The trial court explained its reasoning for dismissing the charge against Eure as follows:

> [The Commonwealth] here failed to establish any real evidence that the bedroom where the gun was found was under the exclusive possession and control of [Eure], or … that he ever exercised dominion over it, and thus failed to establish the existence of any evidence that would demonstrate

- 5 -

that he ever knowingly had the power or the intention at a given time to exercise dominion and control over the weapon that was found there, either directly or through others.

Trial Court Opinion, 10/15/14, at 9.

We disagree. Viewing the evidence in the light most favorable to the Commonwealth and considering all reasonable inferences drawn therefrom, we conclude that the Commonwealth established a prima facie case against Eure for the charge of persons not to possess, use, manufacture, control, sell or transfer firearms. The certified record on appeal reveals the following. Eure is a convicted felon and subject to section 6105(a)(1).[2] **See** N.T., 3/13/14, at 23. While Eure was not present for the compliance check, Officer York stated that he knew him well, that he knew him to live at 2603 Reed Street for his entire police career, and that 2603 Reed Street was the address he was released to from state parole. **Id.** at 6. Officer York reported that Eure's mother, who was home at the time in question, answered the door and told Officer York that Eure's room was the back upstairs bedroom, but that he stayed in the middle upstairs bedroom. **Id.** at 14-15. Officer York testified that he observed clothing in both the middle and back bedrooms, but that he observed a black North Face jacket in the middle bedroom that he had seen Eure wearing approximately one month prior. **Id.** at 7, 16. Officer York further stated that he also noticed that the

---

[2] Additionally, Eure has not contested the fact that he is subject to section 6105(a)(1).

bed in the middle bedroom, although unmade, was dressed with sheets while the bed in the back bedroom contained no sheets. *Id.* at 21. Specifically, Officer York testified:

> The back bedroom, in my opinion, was not lived in, Your Honor. There [were] no sheets on the bed. There was no indication to me that anyone had stayed in there recently. The middle bedroom[] was lived in. There [were] sheets on the bed. The blankets were strewed. There was clothing throughout the bedroom on the floor, indicative that someone was living in there.

*Id.* Finally, Officer York reported that he recovered the black and silver Ruger .45 caliber handgun from between the mattress and box spring of the bed in the middle bedroom. *Id.* at 5.

Officer York's testimony supports a reasonable inference that Eure was in possession of the firearm recovered from the middle bedroom of his home. Officer York's testimony indicated that Eure's mother indicated that Eure used the middle bedroom and that upon entering it, it was apparent that Eure slept in and kept his belongings in the middle bedroom. Therefore, because the middle bedroom was the room from which Officer York recovered the firearm, the reasonable inference that follows is that Eure had the power to control the firearm and the intent to exercise that control. *See Cruz*, 21 A.3d at 1253. Accordingly, because Eure is subject to section 6105(a)(1), we conclude that the trial court erred in granting the

motion to quash the charge against Eure of persons not to possess, use, manufacture, control, sell or transfer firearms and remand the case for trial.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015