J-S19036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| NORMAN KEVIN RODGERS, | : | |
| | : | |
| Appellant | : | No. 1899 EDA 2014 |

Appeal from the Judgment of Sentence February 5, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0012493-2012

BEFORE: BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 20, 2016**

Norman Kevin Rodgers ("Rodgers") appeals from the judgment of sentence imposed following his convictions of persons not to possess, use, manufacture, control, sell or transfer firearms, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and criminal conspiracy.[1] We reverse the judgment of sentence and discharge Rodgers.

The trial court stated the relevant facts as follows:

[At a bench trial,] Officer [Scott] McLane ["Officer McLane"] testified credibly that around 9:10 p.m. on October 3, 2012, Officer McLane and his partner, Officer Eric Girill, pulled over a white Mercury that made a left hand turn at 52nd and Spruce Streets in Philadelphia[,] because the driver failed to yield to traffic when turning down Spruce Street. Officer McLane identified [] Rodgers as the driver of the white Mercury. As the officer prepared to exit his vehicle, [he] observed both [Rodgers] and [c]o-[d]efendant[, Vaughn Dixon ("Dixon"),] making furtive

---

[1] 18 Pa.C.S.A. §§ 6105, 6106, 6108, 903.

movements as their head and shoulders moved below the front seats on multiple occasions.

Upon arriving at [Rodgers's] automobile, [] Rodgers had his hands on the steering wheel and [Dixon] had his hands on the dashboard; neither of wh[om] were asked to do so by the officers. Officer McLane observed [Rodgers] as extremely nervous based on the fact that he was fumbling around with his license, registration, and insurance by dropping the items to the ground or in his lap prior to handing them over to Officer McLane.

[] Rodgers did not have a valid driver's license according to Officer McLane's computer. Thereafter, Officer McLane asked [Rodgers] and [Dixon to get] out of the vehicle[,] because when a driver does not have a valid driver's license, it is Philadelphia Police Procedure to "live stop" the vehicle, which means that it is towed by the police department. Prior to towing the car, police procedure requires the officers to take [an] inventory of the vehicle. When taking inventory of the vehicle, Officer McLane observed a black gun under the passenger's seat. The gun was inside an open white bag that was half under the seat and half sticking out from under the seat. The seat itself was very low to the ground, leaving little space for anything to be placed underneath. Because the bag was open, Officer McLane was able to observe the gun sticking out from the white bag. Upon discovering the gun, the officers placed [Rodgers] and [Dixon] in handcuffs.

Trial Court Opinion, 8/24/15, at 2-3 (citations omitted).

Following a bench trial, Rodgers was convicted of the above-mentioned crimes. On February 5, 2014, the trial court imposed an aggregate sentence of four to eight years in prison, followed by ten years of probation. Thereafter, Rodgers filed a timely Notice of Appeal and a timely court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement of Matters Complained of on Appeal.

On appeal, Rodgers raises the following question for our review: "Was the evidence presented at trial sufficient as a matter of law to support the convictions in this matter?" Brief for Appellant at 4.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

Rodgers argues that the evidence was insufficient to establish that he constructively possessed the gun recovered from the bag beneath the passenger's seat of the car. *See* Brief for Appellant at 12-13, 23. Rodgers claims that his passenger, Dixon, was the individual who had knowledge of, and control over, the gun. *Id.* at 15-16. Rodgers also contends that Dixon

- 3 -

was seated directly above the gun and was very nervous and sweating profusely, whereas Rodgers's behavior was not suspicious. *Id.* at 17, 22. Rodgers argues that he did not constructively possess the gun, where the gun was recovered under the passenger's seat inside an opaque bag, and the officer speaking to Rodgers could not see the gun until he searched the vehicle. *Id.* at 15, 17. According to Rodgers, the Commonwealth presented no evidence that he knew of the gun in the bag underneath Dixon's seat until police found the gun, or until Dixon bent forward to hide it when the police stopped the car. *Id.* at 16, 18-19. Further, Rodgers argues that the Commonwealth proved only that he was driving another person's automobile, which had a weapon in it, and that a passenger, Dixon, was attempting to hide that weapon. *Id.* at 19, 20. Lastly, Rodgers contends that no forensic or documentary evidence linked Rodgers to the gun, as Officer McLane could not tell which part of the car Rodgers was reaching towards, and Officer McLane could not see Rodgers's arm or hand. *Id.* at 14, 22.[2]

---

[2] Rodgers also argues that because the gun at issue was inoperable, the evidence is insufficient to establish the convictions under 18 Pa.C.S.A. §§ 6106 and 6108. Brief for Appellant at 23-26. However, Rodgers did not specify this allegation in his Rule 1925(b) Concise Statement, so the claim is deemed waived. *See Commonwealth v. Lane*, 81 A.3d 974, 979 (Pa. Super. 2013) (noting that any issues not raised in a Rule 1925(b) concise statement are waived on appeal); *see also* Pa.R.A.P. 1925(b)(3)(iv).

In gun possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession. *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999).

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation and quotation marks omitted). "[C]ircumstantial evidence may be used to establish constructive possession of the illegal substance." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011). "However, Pennsylvania courts have held that where another person has equal access to the area where illegal contraband or [a] weapon is found, the defendant cannot be said to have either the power to control or the intent to control such contraband or a weapon *per se*." *Commonwealth v. Heidler*, 741 A.2d 213, 216 (Pa. Super. 1999). Further, a defendant's mere presence at the scene does not establish constructive possession of contraband. *Commonwealth v. Vargas*, 108 A.3d 858, 869 (Pa. Super. 2014) (*en banc*).

Here, Officer McLane pulled over a white Mercury on October 3, 2012. N.T., 10/23/13, at 9-11. Officer McLane identified Rodgers as the driver of

the vehicle and Dixon as the passenger. *Id.* at 11. When asked whose vehicle Rodgers was driving, Officer McLane testified that he did not "recall whose vehicle it was" but that he knew "it wasn't [Rodgers's]." *Id.* at 21.

Following the stop, Officer McLane testified that he noticed Rodgers and Dixon "were both bending down towards the floor board" of the car. N.T., 10/23/13, at 13; *see also id.* at 36 (where Officer McLane testified that he saw Rodgers "[j]ust lean forward" multiple times). Officer McLane stated that Rodgers's head and shoulders "were going below the seats so you couldn't really see them." *Id.* at 13-14. He clarified that he could not tell to which part of the car Rodgers was reaching. *Id.* at 23, 36.

Upon approaching the vehicle, Officer McLane observed Rodgers with his hands on the steering wheel. *Id.* at 27. Officer McLane indicated that Rodgers was nervous based on the fact he dropped his driver's license, registration, and insurance card on the ground and in his lap prior to handing them to the officer. *Id.* at 15-16. However, Officer McLane testified that "some people" are nervous when pulled over for a traffic violation, and that there was nothing suspicious about Rodgers having his hands on the steering wheel. *See id.* at 17, 27; *see also id.* at 35-36 (where testimony indicates that Rodgers's nervousness was not mentioned in the PARS report). Officer McLane testified that Dixon, sitting in the passenger's seat, "had his hands on the dashboard." *Id.* at 15. He said

Dixon was "sweating profusely" despite it being a "pretty cool that night." *Id.* at 29.

After determining that Rodgers did not have a valid driver's license, Officer McLane asked Rodgers and Dixon to step out of the vehicle to take an inventory of the car prior to towing. *Id.* at 17-18. While taking the inventory, Officer McLane testified that he saw a "black gun underneath the passenger's side seat." *Id.* at 5. He testified that the gun was in a bag that "wasn't transparent" and "was half jammed underneath [the seat] and half of it was still sticking out." *Id.* at 18, 29. He stated that the "bag was open" so he "observed the gun inside the bag." *Id.* at 18-19. Additionally, Officer McLane described the front of the car as "roomy" and he thought "there was a little bit of a hump" between the driver's side and passenger's side. *Id.* at 40. The trial court concluded that, based on this evidence, Rodgers constructively possessed the gun. *See* Trial Court Opinion, 8/24/15, at 7-8. We disagree.

Here, our review of the record discloses no evidence establishing Rodgers's constructive possession of the gun. Keeping in mind our standard of review, the record reflects that when Officer McLane approached the vehicle, Rodgers was sitting in the driver's seat and Dixon was sitting in the passenger's seat. N.T., 10/23/13, at 11. While Officer McLane testified that he observed Rodgers's head and shoulders go below the seat, he could not identify where or if Rodgers was reaching with his arms or hands. *Id.* at 23,

36. Officer McLane stated that he later found the gun in an opaque bag halfway sticking out from under the passenger's seat. *Id.* at 5, 18, 29. Officer McLane's testimony that the front seat was "roomy," and that there was a hump between the driver's seat and the passenger seat, does not support a finding that Rodgers had access to the gun. *Id.* at 40. Further, Dixon had equal access, if not exclusive access, to the gun. Thus, the evidence in this case, viewed in a light most favorable to the Commonwealth, was insufficient to support a finding that Rodgers constructively possessed the firearm. *See Heidler*, 741 A.2d at 216 (concluding that the appellant did not have constructive possession on the firearm found in the purse of a passenger of the vehicle where the evidence indicated that the passenger was the only person who could have accessed the purse and the record was devoid of any evidence to demonstrate that the appellant intended to exercise control over the gun); *see also Commonwealth v. Juliano*, 490 A.2d 891, 895-96 (Pa. Super. 1985) (concluding that the evidence was insufficient to conclude that appellant constructively possessed contraband found in a vehicle where appellant was merely present in the vehicle and three other people had equal access to the

area in which the contraband was found).[3]

However, this does not end our inquiry, as the trial court also found that Rodgers had joint constructive possession of the gun with Dixon. "In order to prove joint constructive possession, the Commonwealth again must prove that [a]ppellant had both the power to control and the intent to control the firearm." **Heidler**, 741 A.2d at 216. A defendant's mere presence at the scene does not establish joint constructive possession of the gun. **Vargas**, 108 A.3d at 869; **see also Commonwealth v. Townsend**, 237 A. 2d 192, 195 (Pa. 1968) (holding that mere presence in an automobile in which a weapon is found is not sufficient to prove that an occupant is in joint possession of the weapon).

When viewing the totality of the evidence in a light most favorable to the Commonwealth, the facts and circumstances do not support the finding that Rodgers, with Dixon, was in joint constructive possession of the gun. The Commonwealth presented evidence that the car did not belong to Rodgers. N.T., 10/23/13, at 21. Additionally, after stopping Rodgers, Officer McLane stated that while Rodgers's moved his head or shoulders

---

[3] We additionally conclude that the trial court's reliance on **Cruz, supra**, is misplaced. **See** Trial Court Opinion, 8/24/15, at 7. In **Cruz**, this Court concluded that the appellant had constructive possession of a gun where he was the only person in the vehicle; the police officer observed him moving toward where the gun was found (in a compartment on the passenger side of the vehicle); and the appellant exhibited a marked consciousness of guilt. **Cruz**, 21 A.3d at 1253. Unlike **Cruz**, Rodgers was not the only person in the vehicle; there was no evidence that Rodgers moving toward the passenger's seat where the gun was found; and Officer McLane had testified that not all of Rodgers's actions evidenced a consciousness of guilt.

forward, he could not identify the direction in which Rodgers was reaching. *Id.* at 23, 36. Officer McLane additionally observed that Dixon's hands were on the dashboard, and he was sweating profusely. *Id.* at 15, 29. Officer McLane did not see the gun until he was taking inventory, after Rodgers and Dixon had exited the vehicle. *Id.* at 5. Though Officer McLane testified that the gun was halfway sticking out in an opaque bag from under the passenger's seat, he also stated that the front area of the car was roomy, with a hump between the passenger's seat and the driver's seat. *Id.* at 5, 18, 29, 40. Based on the location of the gun in relation to Rodgers, Officer McLane's testimony that he did not observe Rodgers reach for the gun, Rodgers's lack of ownership of the car, and Dixon's behavior, the evidence fails to demonstrate that Rodgers knew of the presence of the gun, let alone had the power or intent to control it.

Thus, the facts in the case are insufficient to establish joint constructive possession between Rodgers and Dixon. *See Commonwealth v. Armstead*, 305 A.2d 1, 2 (Pa. 1973) (rejecting the Commonwealth's argument that the appellant knew of the presence of a gun found on the front seat of a vehicle, after the appellant and another person were removed from the vehicle, where there was no direct proof that appellant knew of the presence of the gun, and thus, concluding that the Commonwealth failed to demonstrate appellant's intent to exercise control over the gun, necessary to establish joint constructive possession); *Commonwealth v. Boatwright*,

453 A.2d 1058 (Pa. Super. 1982) (holding that the evidence did not establish joint constructive possession of a gun where the gun was on the rear-driver's-side floor, the defendant was in the front passenger seat, and testimony only indicated the defendant made a movement toward the left rear of the vehicle); **Commonwealth v. Duffy**, 340 A.2d 869, 870 (Pa. Super. 1975) (concluding that the Commonwealth failed to establish joint constructive possession where the driver of the car was not the registered owner, and a search of the vehicle revealed a pistol far underneath the passenger's side of the front seat, a mask and gloves in the glove compartment, and burglary tools in the rear seat); **see also Commonwealth v. Hamm**, 447 A.2d 960, 962 (Pa. Super. 1982) (stating that "we may not infer that appellant knew of the weapon's existence simply from the fact that it was hidden in the automobile."). Accordingly, the evidence does not support Rodgers's firearms convictions.

With regard to Rodgers's criminal conspiracy conviction, we note that "[t]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. McCall**, 911 A.2d 992, 996 (Pa. Super. 2006).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a

- 11 -

shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Id*. at 996-97 (citation omitted); *see also Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007) (noting that circumstantial evidence may prove a conspiracy).

Here, the trial court concluded that because Rodgers and Dixon both occupied the vehicle and had joint constructive possession of the firearm, Rodgers engaged in criminal conspiracy. *See* Trial Court Opinion, 8/24/15, at 11 (noting that Rodgers "acted in concert with [Dixon] because they both occupied the vehicle and had joint constructive possession of the firearm."), 11-12 (stating that the totality of the circumstances, including that Dixon controlled the gun because he hid it under his seat, Officer McLane's testimony that Dixon was sweating profusely and had his hands on the dashboard, and Rodgers's presence in the vehicle, demonstrated a criminal conspiracy). We disagree.

As noted above, the evidence did not establish that Rodgers and Dixon had joint constructive possession of the gun. Moreover, even if Dixon

- 12 -

had constructive possession of the gun under his seat, Rodgers's mere presence in the car is insufficient evidence that he was part of a conspiracy. *See Hamm*, 447 A.2d at 962-63 (determining that no conspiracy existed where the Commonwealth proved only that appellant was driving an automobile, not his own, that had a weapon hidden in it, and that one of the passengers was carrying a weapon); *see also Commonwealth v. Carter*, 450 A.2d 142, 145 (Pa. Super. 1982) (stating that "[m]ere presence at or near the scene of an offense, it has been held repeatedly, is insufficient to establish that one is part of a conspiracy"). Although conspiracy may be established through circumstantial evidence, the evidence viewed in a light most favorable to the Commonwealth, is insufficient to demonstrate that Rodgers and Dixon entered into an agreement to possess the gun, or that he or Dixon committed an overt act in furtherance of any other conspiracy. *See Hamm*, 447 A.2d at 962-63.

Based on the foregoing, we conclude the trial court erroneously determined that Rodgers had constructive possession of the gun, joint constructive possession of the gun, and engaged in criminal conspiracy. Thus, we reverse the judgment of sentence and discharge Rodgers.

Judgment of sentence reversed. Rodgers discharged. Jurisdiction relinquished.

Judge Bender joins the memorandum.

Judge Stabile files a dissenting memorandum.

- 13 -

J-S19036-16

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/20/2016</u>