J-S41037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIDDIQ NIXON | : | |
| | : | |
| Appellant | : | No. 3183 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 16, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004836-2022

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MARCH 3, 2025**

Siddiq Nixon ("Nixon") appeals from the judgment of sentence following his convictions for firearms not to be carried without a license and carrying firearms in public in Philadelphia.[1] We affirm.

The trial court set forth the factual and procedural history of this case as follows:

On May 18, 2022, police officers James Gedraitis [("Officer Gedraitis")] and Ryan Struble [("Officer Struble")] were on automobile patrol in the 22nd District in Philadelphia. They were in a marked police car and were in uniform. The officers had been assigned to patrol the area around the corners where 31st Street intersects with Berks Street and Montgomery [Avenue] because of a recent increase in shootings and gun arrests in that area. As they approached the corner of 31st Street and Montgomery Avenue, Officer Gedraitis saw [Nixon] crossing the street in front of their patrol car. Officer Gedraitis noticed two things about [Nixon]. One was that he looked like a teenager. The other was that he appeared to be grabbing under a heavy-weighted object

_____

[1] **See** 18 Pa.C.S.A. §§ 6106(a)(1), 6108.

in his right pants pocket. As [Nixon] passed in front of the car, Officer Gedraitis and Officer Struble each saw an object sticking out of [Nixon's] right pants pocket, which they immediately recognized as the bottom of the grip of a firearm. Because Pennsylvania does not issue licenses to carry to people who are less than 21 years old, Officer Gedraitis concluded that [Nixon] was illegally carrying the firearm.

[Nixon] continued to walk north on 31st Street, and the police officers briefly followed in their car. Then Officer Gedraitis got out of the car and said, "[Y]o, police, stop." He did not draw his weapon, and the car's sirens were not on. [Nixon] ran, with Officer Gedraitis in pursuit, until Officer Gedraitis lost sight of him in an abandoned lot full of cars and high weeds. Officer Gedraitis then saw [Nixon] duck down into an area of high weeds behind an abandoned car and pop back up. Officer Gedraitis yelled "[P]olice, stop," and [Nixon] ran out of the lot. Officer Gedraitis remained in the area where he had seen [Nixon] duck down "to secure the area" where he believed [Nixon] had left his firearm.

In the meantime, Officer Struble drove around the block. He saw [Nixon] running away from the abandoned lot. He placed [Nixon] in the back of his police car and drove back to the entrance to the lot. Officers Gedraitis and Struble called in a K-9 team to search for the firearm they had seen [Nixon] carrying. The officers could not remember how long they waited for the K-9 team to arrive, but estimated that it could have been 15 to 30 minutes. After the K-9 team arrived, both officers moved away from the search area; their understanding was that the search dogs are trained to alert when they smell fresh human odor, and having people in the search area could confuse them. Officer Gedraitis received notice that a dog had alerted in the area where he had seen [Nixon] duck and jump up. Officer Gedraitis went to the spot where the dog had alerted and, while recording on body-worn camera, retrieved a black Beretta .380 caliber pistol from underneath the bumper of an abandoned car. The gun was on top of some matted weeds with vines around it; it was not immediately visible because it was obscured by the car and the high weeds surrounding it. Based on the fact that the firearm he recovered was in the same spot where he had seen [Nixon] duck down, Officer Gedraitis believed that the firearm he recovered was the same one he had seen [Nixon] carrying. He acknowledged that "I can't say for sure it was the same gun [that was] in

[Nixon's] pocket, but I believe it was the same gun [that was in] his pocket."

* * * *

[After the trial court denied Nixon's motion to suppress the gun, t]he parties proceeded immediately to a stipulated trial. The Commonwealth introduced evidence that the firearm was operable and that [Nixon] did not have a license to carry. The Commonwealth did not present any forensic evidence, such as fingerprints or DNA, linking the firearm to [Nixon]. At th[e c]ourt's request, the Commonwealth replayed several portions of the body-worn camera video. The defense presented evidence of [Nixon's] good character. After argument, th[e c]ourt found [Nixon] guilty of both of the charges against him.

* * * *

On October 16, 2023, th[e c]ourt sentenced [Nixon] to two years of reporting probation. [Nixon] filed a post-sentence motion the same day, arguing that the evidence that the firearm belonged to [him] was insufficient to support a guilty verdict. Th[e c]ourt denied the post-sentence motion . . .. [Nixon] timely appealed.

Trial Ct. Op., 2/22/24, at 1-5 (citations to the record and unnecessary capitalization omitted). Both Nixon and the trial court complied with Pa.R.A.P. 1925.

Nixon raises the following question for our review:

Was the testimony presented sufficient to sustain a conviction for [sections] 6106 and 6108 of [t]he Uniform Firearms Act?

Nixon's Brief at 7.

Our standard of review for sufficiency issues is as follows:

Our applicable standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict-winner, was sufficient to enable the fact-finder to conclude that the Commonwealth established all of

- 3 -

the elements of the offense beyond a reasonable doubt. Additionally, when examining sufficiency issues, we bear in mind that: the Commonwealth's burden may be sustained by means of wholly circumstantial evidence; the entire trial record is evaluated and all evidence received against the defendant considered; and the trier of fact is free to believe all, part, or none of the evidence when evaluating witness credibility.

This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

*Commonwealth v. Dewald*, 317 A.3d 1020, 1038 (Pa. Super. 2024) (internal citations, quotations, brackets, and indentation omitted).

Nixon challenges the sufficiency of the evidence for his convictions of carrying a firearm without a license and carrying a firearm on the streets of Philadelphia, specifically, the sufficiency of the evidence of his possession of the firearm. Section 6106 provides that "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S.A. § 6106. Section 6108 prohibits individuals from carrying firearms in public in Philadelphia without a license. *See* 18 Pa.C.S.A. § 6108.

Where a defendant was not in physical possession of contraband, the Commonwealth must establish constructive possession of the item. As this Court has explained:

- 4 -

> Illegal possession of a firearm may be shown by constructive possession.
>
> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (internal citations omitted). Circumstantial evidence of constructive possession includes testimony that contraband was found in the path of a defendant's flight from police shortly after the pursuit. *See Commonwealth v. Roberts*, 133 A.3d 759, 768 (Pa. Super. 2016).[2]

Nixon argues the evidence was insufficient to establish he constructively possessed the firearm. Specifically, he argues that he was not in physical possession of the firearm, and the fact that his flight occurred in a high-crime

---

[2] This Court has concluded the same in unpublished memoranda. *See*, *e.g.*, *Commonwealth v. Bronaugh*, 237 A.3d 472, 2020 WL 2571192 (Pa. Super. 2020) (unpublished memorandum at *4) (concluding the evidence was sufficient to establish constructive possession where police saw the defendant toss an object onto railroad tracks during flight and officers later found a firearm in that same vicinity); *Commonwealth v. Dixon*, 222 A.3d 873, 2019 WL 5491370 (Pa. Super. Oct. 25, 2019) (unpublished memorandum at *4) (holding the evidence was sufficient to establish constructive possession of a firearm where the defendant appeared to be grabbing at a firearm at his waist during flight, disappeared briefly, and when visible again appeared to be running without the object, and a firearm was found in the area where the defendant had briefly disappeared); Pa.R.A.P. 126(b) (unpublished memoranda filed after May 1, 2019 citable for persuasive value).

area militates in favor of a conclusion that "the possibility of finding a random firearm stashed under a bumper is very real!" Nixon's Brief at 13. He argues that the Commonwealth did not offer DNA evidence or video footage of him holding the gun, or evidence of the canine sniff linking him to the firearm, or testimony about whether the gun matched Officer Gedraitis's observations. *See id*.

The trial court considered Nixon's sufficiency challenge and concluded it merits no relief:

> Here, after Officer Gedraitis saw the firearm in [Nixon's] pocket, he saw him run into a large, weedy lot full of abandoned cars, duck down in a spot behind one of the cars, quickly jump up, and keep running. When [Nixon] was stopped moments later, he had no firearm. Officer Gedraitis, suspecting that [Nixon] had tossed a firearm when he ducked down, remained at the scene to ensure that no one would tamper with any evidence. After the K-9 dog arrived and alerted to something, Officer Gedraitis recovered a firearm from the same area where he had seen [Nixon] duck down. Th[e c]ourt found Officer Gedraitis's testimony credible, but also rewatched the body-worn camera video several times to confirm that the firearm was recovered from the same small area—in the weeds, just behind an abandoned car—where [Nixon] had ducked and then jumped up.

> The obvious explanation of these facts is that [Nixon] hid his firearm in the weeds and Officer Gedraitis recovered that firearm. Accepting otherwise would require th[e c]ourt to conclude that some other person had left a loaded firearm on top of a patch of matted weeds, recently enough that the weeds had not had a chance to grow up around it. This is implausible; a vacant lot, behind a car, is an unlikely place to leave a loaded weapon. The [c]ourt would next have to conclude that purely by coincidence, and for no apparent reason, [Nixon] decided to interrupt his flight from Officer Gedraitis to duck down into the very same patch of weeds. Finally, the [c]ourt would have to conclude that the firearm that Officer Gedraitis saw in [Nixon's] pocket had disappeared in some other way. The [c]ourt did not

err by rejecting this fantastical alternative account and concluding that the obvious explanation of events was, in fact, the correct explanation. . . .

Trial Ct. Op., 2/22/24, at 9-10.

Following our review, we conclude the evidence in the light most favorable to the Commonwealth as the verdict-winner establishes Nixon's constructive possession of the firearm based on the following: Officer Gedraitis observed what he believed to be a firearm in Nixon's possession, specifically, the bottom of the grip of the gun, where the magazine well would be, which he immediately recognized based on his then-five years of experience as a police officer. ***See*** N.T., 4/22/23, at 17. When Officer Gedraitis asked Nixon to stop, Nixon fled. ***See id***. at 19. Nixon paused during his flight to bend down in an abandoned lot containing "high weeds and abandoned cars parked everywhere," and it looked to Officer Gedraitis like Nixon was dropping down in an attempt to hide in the high weeds behind an abandoned vehicle. ***Id***. Then Nixon "popped up again and then took off running out of the abandoned lot." ***Id***. Officer Gedraitis remained in the area to secure it for approximately twenty minutes while the K-9 was *en route*. ***Id***. at 24, 39. In the meantime, Officer Gedraitis's partner, Officer Struble, apprehended Nixon. ***See id***. at 25. Officer Gedraitis personally recovered the firearm from the same area from which he saw Nixon "pop up." ***Id***. at 25, 29. The gun was under the back bumper of an abandoned vehicle, on top of the grass. ***See id***. at 29.

In sum: Officer Gedraitis's observations of a gun in Nixon's possession, coupled with Nixon's flight and Officer Gedraitis's subsequent recovery of the firearm hidden in the path of Nixon's flight, together, are sufficient circumstantial evidence to prove beyond a reasonable doubt that Nixon constructively possessed the firearm. *See Dewald*, 317 A.3d at 1038 (evidence must be taken in the light most favorable to the Commonwealth as the verdict-winner); *Cruz*, 21 A.3d at 1253 (constructive possession may be proven by the totality of the circumstances); *Roberts*, 133 A.3d at 768 (circumstantial evidence of constructive possession includes the location of contraband in the path of flight). Accordingly, Nixon's argument merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2025