J-A24006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
VONTELL LANDIS RODENIZER :
:
Appellant : No. 37 MDA 2025

Appeal from the Judgment of Sentence Entered November 18, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003838-2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:  **FILED: DECEMBER 1, 2025**

Vontell Landis Rodenizer ("Rodenizer") appeals from the judgment of

sentence entered by the Dauphin County Court of Common Pleas ("trial court")

following his convictions of person not to possess firearms, firearms not to be

carried without a license, fleeing or attempting to elude a police officer, driving

under the influence, and three summary offenses.[1]  He challenges the

sufficiency of the evidence to prove he possessed the firearm at issue.  We

affirm.

The trial court set forth the following facts:

> On July 7, 2022, Pennsylvania State Police Trooper Kody A.
> Reichart served on patrol duty at approximately 2:00 a.m. in the
> area of North Cameron and Herr Streets in Harrisburg.  [N.T.,

---

[1] 18 Pa.C.S. §§ 6105(a)(1), 6016(a)(1); 75 Pa.C.S. §§ 3733(a), 3802(b),
3112(a)(3)(i) (failure to stop at red signal), 3308(b) (driving wrong way),
3361 (driving at safe speed).

4/15/2024, at] 47-48. Trooper Reichart was in full uniform and operating a marked police vehicle, accompanied by a partner, Trooper Alexander Whittington. [*Id.* at] 48. As he drove southbound on Herr Street, Trooper Reichart observed a white sedan ("the vehicle") travelling northbound, which he later learned was operated by [Rodenizer]. *Id.* As Trooper Reichart passed the vehicle, he observed that the driver-side headlight was out and window tint on the driver's side window [] prevented him from seeing inside the vehicle. *Id.* Trooper Reichart turned his vehicle around and drove slightly behind [Rodenizer]'s vehicle. [*Id.* at] 49. He observed the vehicle at the intersection of Herr and 7th Streets with the right turn signal engaged. *Id.* The vehicle then travelled at a high rate of speed. *Id.* Because of the speed at which it travelled, Trooper Reichart temporarily lost sight of the vehicle. [*Id.* at] 50. Trooper Reichart next observed the vehicle drive through a red light and proceed the wrong way on a one-way street. [*Id.* at] 50-51. Trooper Reichart caught up to the vehicle, then activated emergency lights and siren. [*Id.* at] 52. Upon initiation of lights and siren, the motor vehicle recorder captured the ensuing events. [*Id.* at 52, Ex. C-4]. Trooper Reichart characterized the stop as a high-risk vehicle stop based upon [Rodenizer] having fled and the potential for weapons in the vehicle. [*Id.* at] 57.

The officers determined that probable cause existed for arrest based upon [Rodenizer]'s fleeing and eluding. *Id.* The officers took [Rodenizer] into custody and shone a light into the vehicle to establish that no one else was in the vehicle. [*Id.* at] 58. Trooper Reichart issued *Miranda*[2] warnings to [Rodenizer]. [*Id.* at] 59. [Rodenizer] consented to a search of the vehicle. [*Id.* at] 70. [Trooper Reichart testified that w]hen [he] asked [Rodenizer] if there was anything illegal in the vehicle, [Rodenizer] stated that there "probably or maybe was a gun in the car[."] [*Id.* at] 82-83. Trooper Reichart seized a loaded Glock handgun found on the carpeted floorboard under the front passenger seat and an open bottle of [liquor]. [*Id.* at 71-72, 80-81, Exs. C-7-C-10]. The firearm was not in a holster. [*Id.* at] 73. [Rodenizer] did not possess a license to carry a firearm. *Id.* Trooper Reichart later determined that the firearm belonged to Jamir Ballard. [*Id.* at] 73-74.

---

2 *Miranda v. Arizona*, 384 U.S. 436 (1966).

Trial Court Opinion, 4/28/2025, at 3-4.

The Commonwealth charged Rodenizer with the above offenses and an additional count of driving under the influence.[3]  After multiple continuances, the case proceeded to a one-day trial on April 15, 2024.  The Commonwealth presented the testimony of Trooper Reichart and an expert in firearm and toolmark examinations, along with several exhibits, including two police video recordings of the stop.  Rodenizer testified in his own defense and presented the testimony of Mr. Ballard, which the trial court summarized as follows:

> [Rodenizer] testified that after he was pulled over, when the trooper asked if there was anything illegal in the vehicle[,] he answered "No[.]" [N.T., 4/15/2024, at] 100. [Rodenizer] testified that he then told the trooper that he had two shots of [liquor]. *Id.*  He acknowledged that he then told police that there may be or probably was a gun in the car and that it belonged to a friend who had been in the car and who had a license to carry a firearm. [*Id.* at] 102.
>
> [Mr.] Ballard testified that he used [Rodenizer]'s car earlier that evening.  [*Id.* at 85, 90].  Mr. Ballard testified that he typically keeps the gun in his pants pocket or his belt without a holster.  [*Id.* at] 92.  He testified that he mistakenly left his gun in [Rodenizer]'s car on the left side of the passenger seat near the middle compartment.  [*Id.* at] 86-87.  He testified that he realized that he left the gun when he learned of [Rodenizer]'s arrest.  [*Id.* at] 85.

Trial Court Opinion, 4/28/2025, at 4-5.  The parties stipulated to toxicology records of Rodenizer's blood test results and, outside the presence of the jury,

---

[3] 75 Pa.C.S. § 3802(a)(1).

stipulated that Rodenizer is a person not to possess a firearm based upon a prior conviction. *Id.* at 5 (citing N.T., 4/15/2024, at 68-69, Ex. C-7A).

The jury convicted Rodenizer of firearms not to be carried without a license and fleeing or attempting to elude a police officer. Further, the jury answered affirmatively to the interrogatories asking whether he was in possession of a firearm and driving under the influence of alcohol or a controlled substance. N.T., 4/15/2024, at 171. Thereafter, the matter immediately proceeded to a bench trial and the trial court found Rodenizer guilty of the offenses of person not to possess firearms, driving under the influence, and the summary offenses, and not guilty of the remaining driving under the influence offense.[4] *Id.* at 175-76. The trial court sentenced Rodenizer, on November 18, 2024, to an aggregate term of incarceration of five to ten years. Rodenizer filed a post-sentence motion, which the trial court denied on December 4, 2024. This appeal followed.[5]

Rodenizer presents one question for our review: "When a firearm was discovered only in the car and claimed by another individual, was the evidence

---

[4] As the trial court explained in its opinion, the parties agreed not to present evidence of Rodenizer's prior conviction to the jury and to proceed to a separate bench trial if the jury answered the interrogatories affirmatively. *See* Trial Court Opinion, 4/28/2025, at 2 n.7.

[5] Trial counsel filed a motion to withdraw in this Court on January 10, 2025. We ordered the trial court to conduct a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998); after the hearing, the trial court ordered the Office of the Dauphin County Public Defender to represent Rodenizer.

insufficient to demonstrate that under a constructive possession theory that [] Rodenizer intended to possess the firearm sufficient for convictions under both 18 Pa.C.S. § 6105 and 18 Pa.C.S. § 6106?" Rodenizer's Brief at 4.

Our Court's standard of review of a challenge to the sufficiency of the evidence is well settled:

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial and all reasonable inferences derived from the evidence was sufficient to establish all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden entirely by circumstantial evidence. Moreover, the [factfinder], which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence.

*Commonwealth v. McIntyre*, 333 A.3d 417, 432 (Pa. Super. 2025) (citations omitted). "[W]e may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted). "[A] sufficiency of the evidence review does not include an assessment of credibility of testimony offered by the Commonwealth. Instead, such arguments are more properly characterized as challenges to [the] weight of evidence." *Id.* at 1043 (citations omitted).

Rodenizer argues that the Commonwealth failed to prove that he constructively possessed the firearm located in his vehicle. Rodenizer's Brief at 9-19. He contends that his mere presence in the vehicle is insufficient evidence that he "intended to do anything with the firearm." *Id.* at 10, 12.

- 5 -

He admits the jury could infer his consciousness of guilt from his failure to stop immediately when police signaled, but argues it was relevant to his driving under the influence, not the firearm possession. *Id.* at 17. According to Rodenizer, extending that consciousness of guilt from his flight to the firearm "is a leap too far given [his] equivocal statement" about a possible gun in the car. *Id.* at 17-18. He argues that evidence of his power and intent to exercise control over the firearm is speculative as he did not attempt to touch or actively conceal it and there was no DNA or other evidence of his prior possession of it. *Id.* at 18-19. He further argues its proximity to him in the front of the vehicle and location near the bottle of liquor is insufficient to prove possession. *Id.*

The crime of possession of a firearm by a person prohibited is defined, in pertinent part, as:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1). The crime of firearms not to be carried without a license is defined, in pertinent part, as

> [A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

*Id.* § 6106(a)(1).

- 6 -

"Possession can be found by actual possession or constructive possession." *McIntyre*, 333 A.3d at 432 (citations omitted). "When there is no direct evidence the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the 'legal fiction' of constructive possession." *Id*. (citation omitted). "[A] defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the power to control the contraband and the intent to exercise that control." *Id*. (citation and quotation marks omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not[] and may be established by the totality of the circumstances." *Id.* (citations and quotation marks omitted).

The trial court analyzed Rodenizer's sufficiency claim as follows:

Here, the circumstantial evidence, viewed in its totality, allowed the jury to properly find that [Rodenizer] had conscious [dominion] over the firearm such that he had the ability to possess it immediately and to infer the intent to exercise control over it. The jury was free to consider [Rodenizer]'s behavior before the stop and conclude that [he] evaded police, knowing of the existence and location of the firearm, and that he was a person not to possess a firearm. When asked by the trooper whether there were any illegal items in the vehicle, [Rodenizer] responded that there probably or maybe was a gun in the car. [Rodenizer] referred to "the gun" indicating specific knowledge of its presence and the name of the owner. By its location on the floor of the passenger side of his vehicle, near the bottle of alcohol of the type [Rodenizer] admitted having consumed, the jury could properly infer that [Rodenizer] intended to control the firearm. The firearm was not in a holster and [was] within arm's reach of the driver's seat.

In addition, the jury was free to deem non-credible [Rodenizer's] testimony that he did not know of the presence of a gun in the vehicle. Similarly, based upon [its] review of evidence of [Rodenizer]'s possession and intent to control the firearm, the jury was free to disregard as irrelevant the testimony that [Mr.] Ballard accidentally left the gun in [Rodenizer]'s vehicle.

*   *   *

The parties do not dispute that police located the firearm in [Rodenizer]'s vehicle and that he did not possess a license to carry a firearm. Based upon the evidence cited supra, the jury could properly conclude that the Commonwealth proved [Rodenizer]'s control, knowledge and intent to control the firearm in his vehicle in violation of 18 Pa.C.S. § 6106.

Trial Court Opinion, 4/28/2025, at 7-8 (some quotation marks omitted).

Based upon our review of the record in the light most favorable to the Commonwealth, we agree with the trial court that the Commonwealth established sufficient evidence from which the trier of fact could conclude that Rodenizer constructively possessed the firearm. First, a jury could reasonably infer that Rodenizer had the power to control the firearm. Our review of the police video recording confirms that when the trooper asked Rodenizer, "If there would be anything in the car, what would it be?" he responded, "Probably a gun registered to my friend." N.T., 4/15/2024, at 55, Ex. C-4 (MRV Stream 0 (dashcam) at 6:14-6:17); *see also id.* at 82-83, 102. He then added, "I wasn't possessing the gun." *Id.*, Ex. C-4 (dashcam at 6:24-6:26). The jury, as the arbiter of credibility, was free to reject Rodenizer's testimony that he did not know that a gun was in his car. *See id.* at 102-03; *see also McIntyre*, 333 A.3d at 432. Further, the evidence showed that

- 8 -

Rodenizer was the sole occupant of the vehicle and the unholstered firearm was located within his reach on the front passenger seat floor, just under the seat and near the open bottle of liquor. *Id.* at 64-65, 72-73, 80-81. Thus, the record evidence of Rodenizer's admission to police that his friend's gun was probably inside his own vehicle, his specific reference to "the gun" (as opposed to generally referring to "a gun"), his operation of the vehicle, his exclusive access to the firearm as the car's only occupant when police stopped it, and the firearm's proximity in an area he could reach was sufficient for the jury to infer that Rodenizer knew of the firearm's existence inside the car and had the power to control it. *See McIntyre*, 333 A.3d at 432.

Second, a jury could reasonably infer that Rodenizer intended to exercise control of the firearm. The record evidence showed that despite knowing that his friend's gun was probably inside his car, Rodenizer drove it anyway and fled police when they tried to stop him. The police video recording shows Rodenizer admitted to the trooper that he knew Mr. Ballard carried a firearm, and agreed with the trooper that Rodenizer should have checked his car for a firearm before driving it because he knew Mr. Ballard had been inside it earlier that night. N.T., 4/15/2024, at 64, Ex. C-5 (MRV Stream 2 (backseat) at 37:15-37:23). Rodenizer disregarded that risk and drove his car anyway. Further, Trooper Reichart testified that Rodenizer failed to stop immediately after the troopers activated their lights and sirens, leading the troopers to give chase and demonstrating Rodenizer's consciousness of guilt.

*See* N.T., 4/15/2024, at 78; Ex. C-4; *see also Commonwealth v. Laird*, 988 A.2d 618, 627 (Pa. 2010) (indicating that flight from police can constitute circumstantial proof of consciousness of guilt) (citation omitted); *Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa. Super. 2016) (recognizing the factfinder could find infer consciousness of guilt from the appellant's flight from police into a basement as part of the Commonwealth's evidence proving his constructive possession of a firearm) (citation omitted). To the extent Rodenizer challenges the relevance of evidence of his flight from police with respect to the firearm (as opposed to driving under the influence), such a claim goes to the weight of the evidence, not its sufficiency. *See Juray*, 275 A.3d at 1042-43. Thus, Rodenizer's flight, his acknowledgement that he should have checked his car for a firearm before driving it based on his knowledge that Mr. Ballard carried a gun and used Rodenizer's car earlier that night, and his disregard for that risk was sufficient for the jury to infer that Rodenizer intended to exercise control of the firearm. *See McIntyre*, 333 A.3d at 432.

Appellant discusses several cases in support of his claim of insufficient evidence to support his firearm convictions:

- *Commonwealth v. Macolino*, 469 A.2d 132, 135 (Pa. 1983) (addressing joint constructive possession and concluding that "constructive possession can be found in one defendant when both the husband and wife have equal access to an area where the illegal substance or contraband is found");

- *Commonwealth v. Heidler*, 741 A.2d 213, 216 (Pa. Super. 1999) (stating that there is no per se finding of power to control

or intent to exercise control of contraband where more than one person has equal access to the area where contraband was found);

- ***Commonwealth v. Parrish***, 191 A.3d 31, 37-38 (Pa. Super. 2018) (concluding the appellant did not constructively possess contraband found in the front, passenger side of a car where, inter alia, the vehicle had three occupants; the appellant was sitting in the back seat on the driver's side; did not own the car, operate it, or have its keys; and had never sat in the car's front seats); and

- ***Commonwealth v. McClellan***, 178 A.3d 874, 879-80 (Pa. Super. 2018) (concluding there was sufficient evidence of the appellant's constructive possession of a gun recovered from the basement of his family's home where the gun's DNA samples implicated the appellant, the basement was furnished as a common area, and the appellant had unrestricted access to it).

***See*** Rodenizer's Brief at 13-17.  As the squibs above reflect, however, these cases involve joint access or multiple people inside a vehicle stopped by police. In contrast here, Rodenizer was the sole owner and operator of the vehicle, the only person inside, and the only one with access to the firearm when police stopped him.  As such, these cases do not compel reversal.

The evidence of record established facts from which the jury could reasonably infer, based on the totality of the circumstances, that it was more likely than not that Rodenizer constructively possessed the firearm.  ***See McIntyre***, 333 A.3d at 432; ***see also Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011) (concluding there was sufficient evidence to find constructive possession of a firearm found in a vehicle where the appellant was the only person in the vehicle, police found the gun in a compartment on the passenger side of the vehicle, the appellant moved toward the gun's

- 11 -

location as soon as police activated lights and siren, and he exhibited consciousness of guilt by giving police multiple names and birthdates). We therefore conclude that the evidence at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to support Rodenizer's firearm convictions.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/01/2025